NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

TAX COURT OF NEW JERSEY



**Mala Sundar**
 **JUDGE**

R.J. Hughes Justice Complex
 P.O. Box 975
25 Market Street
Trenton, New Jersey 08625
Telephone (609) 943-4761
TeleFax:  (609) 984-0805
taxcourttrenton2@judiciary.state.nj.us

April 17, 2017

Andrew Kessler, Esq.
Saiber, L.L.C.
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932

Lani Lombardi, Esq.
Cleary, Giacobbe, Alfieri & Jacobs, L.L.C.
5 Ravine Drive
Matawan, New Jersey 07747

>           Re:     Ho Properties v. Howell Township
>                   Block 69, Lot 1
>                   Docket No. 000039-2016

Dear Counsel:

This is the court's opinion deciding defendant's motion to dismiss plaintiff's 2016 property tax appeal pursuant to N.J.SA. 54:4-34 ("Chapter 91").  Defendant ("Township") sought dismissal on grounds plaintiff failed to respond to its August 2015 Chapter 91 request, which was properly addressed and mailed, and undisputedly received.  Plaintiff opposed the motion on grounds the above-captioned property ("Subject") was vacant since at least 2010, thus, was not income producing.  It maintained that the Township's assessor was fully aware of the Subject's vacant status before sending his Chapter 91 request, since he was in possession of plaintiff's discovery responses in this regard for the prior tax year.  Plaintiff also noted that the assessor personally knew of the vacancy when he inspected the Subject after he had sent the Chapter 91 request and before the response was due, and had called plaintiff's attorney immediately after the inspection.

*

It refuted the assessor's claims that the construction vehicles and equipment on the Subject site could be a source of lease income since those vehicles were illegally parked.

The court finds that the vacancy of an income producing property does not automatically convert the property into non-income producing such that plaintiff, under the facts of this case, was excepted from the response requirements of the Chapter 91 statute. While the assessor's personal knowledge of the Subject's vacancy during pendency of the Chapter 91 request can be explored in a reasonableness hearing, it does not justify a failure to respond to a statutorily compliant Chapter 91 request. The complaint is therefore dismissed subject to a reasonableness hearing pursuant to Ocean Pines Ltd. v. Borough of Point Pleasant, 112 N.J. 1 (1988).

**FACTS**

On January 8, 2016, Ho Properties filed a complaint challenging the 2016 assessment of $1,076,800. On June 30, 2016, the Township moved to dismiss the complaint for failure to respond to the Chapter 91 request. The following facts are taken from the documents attached to certifications by the parties, and presented chronologically.

Prior to the 2016 appeal, plaintiff also had pending before this court appeals for tax years 2012, 2013, and 2015. In September/November of 2014, plaintiff provided responses to the Township's interrogatories relative to tax year 2013, which were served upon the Township's attorney (the same individual representing the Township herein). As pertinent to the issue here, those responses stated that the Subject was used "exclusively" as a restaurant, which was rented for such use, but had been vacant since October 2010, and that "100%" of the Subject was "vacant for a portion of year 2010; 100% vacant for years 2011 and 2012." Attached were portions of a 2010 Chapter 91 response, portion of the federal income tax return for 2011, and Income & Expense ("I&E") statements for 2012-2013 as proof of zero rental income for 2011-2013. The

2

responses also indicated that "no portion of the property is owner-occupied," and that there were no "offers to lease," or "options to purchase." There was a January 2013 contract of sale which had, however, "expired and terminated." The agreement did not indicate the presence of any tenant on the Subject. A listing agreement showed that the Subject was being offered for sale at $699,000, or for a monthly rent of $6,000. That agreement was effective July 2014 to January 2015.

In response to the Township's interrogatories, plaintiff reiterated that because the Subject "has been vacant since October 2010," there was no tenant name, rent amount, or copy of a rent roll for 2011 and 2012, and for 2010, rent was collected for only 10 months before "the tenant vacated and ceased payments." A copy of the lease was also attached. The responses also noted that the Subject had a "sale sign outside the restaurant" from 2010 until Superstorm Sandy, and the property was not listed with a broker until 2014, thus was not listed for sale during 2011-2013. It noted that the 2013 sale contract was terminated since the buyer lost interest.

On May 13, 2015, plaintiff's attorney sent a letter to the Township's outside counsel providing her a copy of a fully executed sale contract for a sale price of $600,000 and an updated listing agreement, with an undertaking to provide her with closing documents to resolve the pending 2013 tax appeal. The new buyer was "Joseph Rabinowitz or an entity to be formed."

On August 18, 2015, the assessor sent, by certified mail, a Chapter 91 request (post-dated August 21, 2015) for I&E information for the calendar year 2014. The cover letter specifically stated:

> Please note that if the property in question is not an income producing (rental) property, or the property was owner occupied during the [2014] calendar year, you are still required to respond in writing within the 45-day statutory period, advising the Tax Assessor as to the same.

The letter also directed plaintiff to contact the assessor's office with any questions or clarifications as to the "information sought."

3

Plaintiff received the request on August 25, 2015. It did not send any written response.

A month after sending the Chapter 91 request, the assessor "while traveling in the area, . . . decided to stop at the" Subject to try inspect it. A September 18, 2015 email from the Township's counsel to plaintiff's counsel stated that she had "communicated with the [a]ssessor," who was "inspecting in the area so he did an outside site inspection of the [Subject] and was able to see the inside through the windows." The assessor called plaintiff's counsel advising him of the inspection in connection with the resolution of the prior years' pending appeals.

The assessor stated that since his September 2015 inspection was "unscheduled," he performed a limited inspection of walking from the front entrance to the building's rear but was only able to "observe the interior of one of the rooms . . . through one window," due to certain "obstructions" (which were not elucidated), and saw that the room "appeared unoccupied." During this visit, he claimed he was startled by the appearance of an individual "just outside the front entrance," and saw "large construction type vehicles and equipment parked and stored in the rear of the parking lot." He stated that this led him to believe that the Subject "was being used to store vehicles and construction equipment," and to "wonder[]" if plaintiff was "collecting rent for such storage."

The assessor stated that he had reviewed plaintiff's interrogatory responses for tax year 2013, and while those stated that the building was vacant, never stated that the Subject was "not income producing," and indeed "specifically alleged that the property was not owner occupied." He was aware of the two sale contracts (in early 2013, and in May 2015, both received through the Township's counsel), but claimed he had no "further details" in this regard. He claimed that he "fully intended to utilize the expected Chapter 91 response" for setting the 2016 assessment because (1) plaintiff had not responded to the Township's interrogatories for tax years 2014 and

4

2015, nor to the 2015 tax year's Chapter 91 request, (2) the sale contracts were "stale[],"and, (3) his "observations" at the Subject indicated possible rental income. He certified that "just because a building appears 'visually vacant' and not being 'used' does not always mean that the property owner is not still collecting rental income pursuant to a lease, or collecting income revenue through another rental relationship." He claimed that he only learned of the Subject's "actual sale" sometime in April 2016, which was to a "seemingly different buyer."

In response to the assessor's contentions that the storage of vehicles could be an income source, plaintiff's principal certified that after Subject became vacant plaintiff had notified municipal officials that vehicles and equipment were being illegally parked and stored on the property. The principal claimed that the officials were also aware that the Subject was being used by individual trespassers, who were possibly homeless. Plaintiff's attorney also certified that when the assessor had spoken to him after the September 2015 inspection about the pending appeals, they both confirmed the Subject's vacant status, and additionally both counsel, plaintiff's expert, and the assessor met on April 5, 2016 to inspect and discuss the settlement of the instant appeal. He averred that "at no time prior to, during, or after [the September 2015] inspection" did the assessor or the Township's counsel "suggest" that plaintiff was likely receiving income from storage of vehicles and equipment on the property.[1] The attorney agreed with the assessor's

---

[1] The Township's counsel vehemently objected to the filing, and consideration by this court, of plaintiff's counsel's certification due to his status as counsel, and pursuant to R. 1:6-6. Since plaintiff's principal refuted the presence of the vehicles on the Subject, the issue as to the dispute in this regard is properly before the court. However, under R. 1:6-3(a), after any opposing and reply briefs are filed, "[n]o other papers may be filed without leave of court." Here, plaintiff's counsel did not seek this court's permission to file additional certifications. As such, the court cautions counsel to heed and comply with the court rules on motion practice. As to plaintiff's counsel's first certification, which was offered as plaintiff's opposition, the court notes that he was certifying to documents attached which were provided to the Township in discovery. Since the same were undisputed, the court does not deem it improper. See Pressler & Verniero, N.J. Court Rules, comment on R. 1:6-6 (2017) (discovery materials do not require certification when being offered to support or oppose a motion).

5

assertion that during the April 2016 meeting he had "nothing to do with the buyer" of the Subject, however, was retained by the new buyer after the 2017 assessment was set.[2]

**ANALYSIS**

N.J.S.A. 54:4-34 requires a property owner to "render a full and true account of" the property owner's "name and real property and income therefrom," if the property is "income-producing." If the owner fails or refuses to respond to a Chapter 91 request, it loses the right to challenge the valuation and assessment on the "income-producing property." Ibid. The property owner's appeal is then limited to a hearing as to whether the assessment was reasonable in light of the available data and methodology used by the assessor. See Ocean Pines, supra, 112 N.J. at 11. "The whole premise of chapter 91 is that the taxpayer is in control of the income information; using the income information is a good, if not the best, measure of value; and if the taxpayer withholds that information, the municipality has no other choice but to set the assessment without the benefit of income information of the subject property." Carriage Four Associates v. Township of Teaneck., 13 N.J. Tax 172, 177 (Tax 1993).

The statute does not provide any exceptions to, or exemptions from, the response requirement. Rather, it only allows for an extension of time to provide the response. See N.J.S.A. 54:4-34 ("The county board of taxation may impose such terms and conditions for furnishing the requested information where it appears that the owner, for good cause shown, could not furnish the information within the required period of time."). However, under few circumstances, precedent has permitted escaping the consequences of a non-response, i.e., an appeal being limited to a reasonableness hearing. One exception is if the property is not income producing. H.J. Bailey Co. v. Township of Neptune, 399 N.J. Super. 381, 382-83 (App. Div. 2008) ("Chapter 91's appeal-

---

[2] For 2017, as to which there is an appeal pending in this court, the property owner is Sapphire Investment Group, L.L.C.

6

preclusion provision and the limited appeal process fashioned by our Supreme Court in Ocean Pines apply solely to income-producing properties"); see also Monsanto Co. v. Township of Kearny, 8 N.J. Tax 109 (Tax 1986) (an "owner-occupied" property is not "income producing" therefore, the consequences of a non-response do not apply).3  Another exception is that the property's income must be attributable to real property, i.e., rent.  ML Plainsboro, Ltd. v. Township of Plainsboro, 16 N.J. Tax 250, 259 (App. Div.), certif. denied, 149 N.J. 408 (1997).

Thus, properties occupied entirely by their owner are deemed to produce no rental income attributable to real property, therefore, are excepted from the results of a non-response to a Chapter 91 request.  This is so even if the request had sought an affirmative response that the property is owner-occupied.  See H.J. Bailey, supra, 399 N.J. Super. at 384.  Conversely, income from lease of a portion of property for "storage of vehicles" requires a Chapter 91 response even if the property owner's building was owner-occupied.  Alfred Conhagen, Inc. v. Borough of South Plainfield, 16 N.J. Tax 470, 472 (App. Div. 1997).

Here, it is undisputed that plaintiff did not send any written response.  Its justification is that (1) the Subject was vacant since 2010, thus, evidently non-income producing, and (2) the assessor was fully aware of the Subject's vacant status as of 2010-2013.  In support, it relies upon its 2013 interrogatory responses sent in September/November 2014, the assessor's voluntary site inspection a month after he sent the Chapter 91 request which confirmed the vacant status of the Subject, settlement discussions of prior year appeals during the same time period, and the assessor's pre-Chapter 91 request knowledge of attempted sale of the Subject.

---

3 The plaintiff in that case wrote a letter to the assessor, within the 45-day period, that the property "was a manufacturing plant owned and occupied by plaintiff." Monsanto, supra, 8 N.J. Tax at 110-11.  Regardless, the court noted that plaintiff did not submit the I&E "statement . . . in response to the assessor's request." Id. at 111.

These justifications have been addressed, albeit in three different cases involving differing facts. In Conhagen, supra, the property owner was the sole occupant of its building, however, was receiving rent by leasing a portion of its land for storing vehicles. 16 N.J. Tax at 472. For three years, it received such rent. Ibid. The assessor knew this fact, and used the same to set the property's assessment. Ibid. In May 1994, the rental ceased. Ibid. The assessor sent a Chapter 91 request in July 1994 to which there was no response. Ibid. The court held:

> Where the property has not produced income, the taxpayer is obliged to report that fact to the tax assessor. The failure to produce income may be explained by the temporary loss of a tenant, the presence of a tenant who has failed to pay rent, or, as in this case, the apparent termination of the tenancy and a withdrawal of the property from the rental market.
>
> These examples are not intended to be exclusive but are illustrative of information that should be provided to a tax assessor whose records clearly reflect that a property has been used as income-producing property.
>
> [Id. at 473.]

In Thirty Mazel, L.L.C. v. City of East Orange, 24 N.J. Tax 357, 367 (Tax 2009), the court ruled that an income producing property does not cease to become income producing due to temporary vacancy. The properties were apartment complexes which had become vacant for about a year due to renovations, thus, had no rental income for the time period for which the assessor sought I&E information pursuant to Chapter 91. Id. at 361. The court concluded that the temporary vacancy did not render the properties non-income producing or owner-occupied, therefore, there was no excuse for the taxpayer's non-response to the valid Chapter 91 request. Id. at 368. The facts lending to this conclusion were: (1) the properties were always income producing and so reflected by the assessor's records, (2) the one-year rental gap was temporary, (3) the "gap in rent collection was [not] occasioned by a change in the use of the property or by owner occupancy," and, (4) there was no intent to abandon the "income-producing nature of the

8

properties." Id. at 367.  The court likened the "[t]emporary vacancies occasioned by renovations" to the examples of a "temporary loss of a tenant" or a defaulting tenant.  Id. at 367 (quoting Conhagen, supra, 16 N.J. Tax at 473).

Finally, in Summerton Shopping Plaza v. Township of Manalapan, 15 N.J. Tax 173, 177 (App. Div. 1995), the court ruled that providing discovery for a prior tax year does not excuse a non-response to a Chapter 91 request.  The property at issue was not vacant.  The assessor had sent a Chapter 91 request in April of 1992 (for tax year 1993), during which time the parties were discussing settlement of the 1992 tax appeal.  Id. at 175.  The taxpayer's counsel forwarded interrogatory responses pertaining to the 1992 tax year in August of 1992 (thus, after the Chapter 91 was sent) to the municipality's counsel.  Ibid.  In response to a Chapter 91 motion, the taxpayer contended that due to its discovery responses, the assessor "had access to [the income] information which would have enabled [him] to fulfil the statutory assessment duties in timely fashion."  Id. at 176.  The court rejected the taxpayer's implication that the "assessor must be charged with awareness of the materials received by the Township's counsel during discovery on the 1992 appeal."  Ibid.  It held:

> It was not "unfair" to require timely compliance with N.J.S.A. 54:4-34 in order to assist the assessor in meeting the assessment deadline for all properties in the taxing district. Special treatment for one requires special treatment for all, thwarting efficient operation of the assessment process.  As to the argument that the material given to a municipal attorney in connection with one appeal should be deemed to have "substantially complied" with the [Chapter 91 request] respecting the 1993 assessment, we think that the Legislature meant the assessor's request . . . to the taxpayer must be clear cut and certified, and similarly that the response should be directed to the assessor, rather than charging the assessor with knowledge of information in the hands of other municipal entities.

> [Id. at 176-77.]

It is evident that unlike Thirty Mazel, the Subject's vacancy was not a one-year temporary gap.  Unlike Summerton, supra, the assessor undisputedly reviewed and possessed the documents

9

evidencing the Subject's vacant status. Unlike in <u>Thirty Mazel</u> and <u>Conhagen</u>, here the assessor was aware of the plaintiff's assertions (through the 2013 discovery documents) that the Subject was vacant since October 2010 until 2013, and of the Subject's sale attempts in 2013 and 2015, all of which pre-dated his sending of the Chapter 91 request. Finally, it is undisputed that the assessor personally inspected the Subject a month after he sent the Chapter 91 request, and noticed its "unoccupied" status.

The principles from the above three cases show that if the Subject was not income producing during calendar year 2014, it should not suffer the consequences of a non-response. However, a 100% vacancy of an income producing property for a particular time-frame does not necessarily indicate a 0% income attributable to real property. As noted in <u>Conhagen</u>, <u>supra</u>, a tenant may vacate the premises due to loss of business, or other circumstances, yet may pay, or be required to pay, lease payments under the rental agreement.

Therefore, the assessor must be notified of the non-income producing status, especially if the Subject was income producing in prior tax years and was so recognized by the assessor. It is clear from precedent that such notice cannot be through discovery responses related to other tax years or in the course of settlement discussions, especially since those communications are aimed at litigation/compromise. <u>Cf.</u> <u>Delran Holding Corp. v. Township of Delran</u>, 8 <u>N.J. Tax</u> 80, 83-84 (Tax 1985) (cannot use Chapter 91 request as a litigational discovery tool). If permitted, it would "thwart[] efficient operation of the assessment process" and nullify the statutory mandate upon property owners to "render" information in favor of "[s]pecial treatment" for property owners who have prior or multiple year appeals. <u>See</u> <u>Summerton</u>, <u>supra</u>, 15 <u>N.J. Tax</u> at 176-77.

It is true that the assessor here possessed and reviewed plaintiff's discovery responses for tax year 2013, which stated that the Subject was vacant until 2013. He was also aware of the

10

Subject's attempted sales. The plaintiff may reasonably have expected the assessor to be fully aware of all prior years' pending appeals and of the discovery responses and documents as to each appeal, and further have expected the assessor to apply such information to a pending Chapter 91 request. However, this does not excuse a Chapter 91 response. Plaintiff could have told the assessor, within the 45-day period (i.e., during pendency of the Chapter 91 request), that its prior discovery responses, which showed that the Subject was 100% vacant, and 0% income producing, should be used as a response to the Chapter 91 response which sought I&E information for calendar year 2014. This would obviate any confusion as to its income producing status (such as here, for instance, where the listing agreement evidenced that plaintiff was still seeking to rent the Subject, thus, never abandoned its intention to use the Subject as income producing). Instead, it chose to assume that the assessor would deem the prior discovery as a Chapter 91 response.

A property owner must notify the assessor of the property's non-income producing status, but such notification must be provided as a direct, not implied, response to the Chapter 91 request. There is no statutory or other legal bar preventing a property owner from alerting the assessor to discovery responses or other documents as a means of notifying the assessor of the non-income producing nature and status of a property. This can be done by a notation on the I&E statement accompanying the Chapter 91 request, with a copy of those documents (or even as a separate letter attached to the I&E statement, with the discovery responses attached), as long as the notification is within the 45-day time period and references the Chapter 91 request.

Here, there was no such attempt to communicate to the assessor. The inspection and subsequent communication with plaintiff's attorney following the Chapter 91 request was initiated only by the assessor, and was not in connection with, or at the behest of plaintiff, in, and as, plaintiff's direct response to the Chapter 91 request. All plaintiff had to do was to tell the assessor,

11

within the 45-day period, that in response to his Chapter 91 request, he had prior discovery which showed the Subject was 100% vacant and 0% income producing since October 2010, and this status did not change during calendar year 2014. Indeed, even this is not required since the Chapter 91 request here told plaintiff to simply advise the assessor, in writing and within the 45-day time limit, that the property was "not an income producing (rental) property," or was "owner occupied" for the 2014 calendar year.[4] Plaintiff's presumption that the assessor would (or should) deem the (year old) discovery responses as a full and substantive Chapter 91 response does not accord with the statute, especially where plaintiff was marketing the Subject for sale or lease in 2014.

This conclusion does not conflict with the holding in H.J. Bailey, supra, that owners of non-income producing properties can choose to not respond to a Chapter 91 request with impunity. The reason for this was articulated in Thirty Mazel, supra, and fully applies here. There, in rejecting the taxpayer's argument that a non-response was permitted since the vacancies made the properties non-income producing under H.J. Bailey, supra, the court noted that the H.J. Bailey court had relied upon Conhagen, supra, when cautioning a property owner that failure to respond risks a loss of appeal. Thirty Mazel, supra, 24 N.J. Tax at 366.

In sum, because vacant property is not necessarily non-income producing (as illustrated above), a response to the Chapter 91, even as a notification to the assessor, is required. Any disclosures in plaintiff's answers to interrogatories as to the Subject's vacancy and of the Subject's zero rental income cannot be imputed to the assessor without plaintiff showing that it incorporated this information to, and re-served it upon the assessor as, a direct response to the Chapter 91

---

[4] If plaintiff had attempted to prove that it had called the assessor's office, an invitation plain on the face of the Chapter 91 request, and asked the assessor to inspect the Subject, and that the September 2015 inspection and subsequent conference was a direct result of plaintiff's this communication, the court may have had to hold a credibility hearing on the issue. While the statute does not mandate a written response to a Chapter 91 request, such a result is not only reasonable but also practical. One, the assessor's request includes a fillable form, thus avoids duplication of effort, and hones on information identified by the assessor. Two, it avoids a proof hearing on whether and what was provided as information by a property owner to the assessor.

request.  The facts do not evidence plaintiff's intent to abandon using the Subject for producing rental income, or to use the Subject for its own use and occupancy.

The court is aware that the consequences of a failure to respond to a Chapter 91 request are harsh.  This is particularly so here where the assessor personally inspected the Subject prior to the October 1 assessment date.[5]  However, the assessor's prior knowledge of the property's vacant status, lack of income, his basis for the assessment, and data used to decide income produced from land or ground leases (since he felt that the Subject received income due for vehicle storage), can all be explored in the reasonableness hearing.  See, e.g., Summerton, supra, 15 N.J. Tax at 176-77 ("[t]o the extent the taxpayer relies on the information said to have been known to the assessor, this could easily have been explored in the reasonableness hearing").

## CONCLUSION

For the reasons stated, the court grants the motion in part, subject to a reasonableness hearing.  An accompanying order will be uploaded to eCourts this day.

Very Truly Yours

Mala Sundar, J.T.C.

---

[5] The 2012-2015 appeals were reported as settled in April of 2016, which is when the parties undisputedly met for settlement purposes. The July 2016 stipulation filed with this court reduced the original assessment for tax years 2012-2014 ($1,037,300) to $1,000,000; $875,000; and $750,000 respectively.  For tax year 2015, when the average ratio was 87.24% the assessment, which was the same as for 2016 ($1,076,800), was reduced to $700,000.  The Township never moved to dismiss the 2015 appeal although it claims plaintiff never responded to its Chapter 91 request.  Yet it moved to dismiss the 2016 appeal.  For 2017 when the average ratio was 94.27%, the same assessment of $1,076,800 was reduced to $601,000 by an "assessor's appeal."  It thus appears that the true value implied by the 2016 assessment raises an issue.  Since plaintiff did not apply for relief under the Freeze Act (based on the 2015 judgement), the court assumes that this was due to a district-wide revaluation in effect for 2016 in the Township, since the Chapter 123 ratio for 2016 is shown as 93.47%.